*Rosalyn Walston v. Paul Lindsay*, No. 38, September Term, 2025.  Opinion by Booth, J.

**FAMILY LAW – PROTECTIVE ORDERS – DE NOVO APPEALS TO THE CIRCUIT COURT**

Where a District Court enters a final protective order and a de novo appeal is filed in a circuit court under Md. Code, Family Law Article § 4-507(b), the Supreme Court of Maryland held that the circuit court has the authority to issue intervening orders pending the hearing on the final protective order.  Such a construction is consistent with not only the plain language of the statute, but also with the remedial purpose of the statute, which is designed to protect victims of domestic violence.

Where the circuit court issues intervening orders during the pendency of a de novo appeal, the Supreme Court held that it does not transform the nature of the proceeding from the circuit court's exercise of appellate jurisdiction into the exercise of original jurisdiction thereby giving an additional right of appeal under § 12-301 of the Courts and Judicial Proceedings Article.  A de novo appeal, by its very nature, is a wholly original proceeding in which the circuit court must act "as if no judgment ha[s] been entered [by] the lower court." *Hardy v. State*, 279 Md. 489, 493 (1977).

The Supreme Court of Maryland determined that, in this case, the circuit court's issuance of intervening protective orders during the pendency of the de novo appeal was not an exercise of original jurisdiction and that there was no further right of appeal to the Appellate Court of Maryland.

Circuit Court for Montgomery County
Case No.: C-15-FM-25-808834
Argued: April 7, 2026

IN THE SUPREME COURT

OF MARYLAND

---

No. 38

September Term, 2025

---

ROSALYN WALSTON

v.

PAUL LINDSAY

---

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

---

Opinion by Booth, J.

---

Filed: July 17, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case involves an appeal of a final protective order issued by the District Court of Maryland sitting in Montgomery County. Petitioner Rosalyn Walston and Respondent Paul Lindsay are parents of a minor child, "M." In the District Court, Mr. Lindsay sought and obtained, on behalf of M., an interim protective order, a temporary protective order, and, ultimately, a final protective order against Ms. Walston. Thereafter, Ms. Walston noted a de novo appeal of the District Court's final protective order to the Circuit Court for Montgomery County.

During the pendency of the appeal before the circuit court, Ms. Walston sought and was granted two motions for continuance. In granting the continuances, the circuit court entered intervening protective orders. After a de novo hearing on May 28, 2025, the circuit court granted Mr. Lindsay, on behalf of M., a final protective order effective through May 28, 2026. Ms. Walston then noted an appeal to the Appellate Court of Maryland. The Appellate Court entered an order transferring the case to this Court after concluding that it had no appellate jurisdiction because the circuit court had exercised its appellate jurisdiction in reviewing the decision of the District Court.

We granted certiorari in this case to answer the following question, which we have rephrased:

> Whether a circuit court, when acting pursuant to its authority under Md. Code, Family Law Article ("FL") § 4-507(b) to consider de novo appeals from a District Court's entry of a final protective order, has the authority to enter intervening protective orders prior to a hearing on a final protective order, and if not, whether the issuance of a protective order constituted an exercise of original jurisdiction, such that the final judgment was not rendered in the "exercise of appellate jurisdiction" under Md. Code, Courts & Judicial Proceedings Article ("CJ") § 12-302(a).

As we explain more fully below, we hold that, when undertaking a de novo appeal under FL § 4-507(b) from a District Court judge's final decision related to a petition filed under the domestic violence statute, a circuit court has the authority to enter intervening protective orders during the pendency of the appeal. The entry of such orders by the circuit court does not transform the circuit court's appellate jurisdiction into an exercise of original jurisdiction thereby giving the parties a further right of appeal pursuant to CJ § 12-302(a). We therefore affirm the judgment of the Circuit Court for Montgomery County.

# I

## Procedural History

### A. Initial Adjudication in the District Court of Maryland

Mr. Lindsay filed a petition for protection from child abuse on behalf of his minor child, M., who was 11 years old at the time, in the District Court of Maryland sitting in Montgomery County on April 6, 2025. The petition alleged that, at some point between the "end of March" and April 6, 2025, Ms. Walston "punched [and] pushed [M.] down to the ground, punched [and] pin[n]ed [M.] to the ground[,]" and continued to beat him on several occasions. Thereafter, M.'s "sister came and stopped [Ms. Walston] from abusing [M.] more." The petition further alleged that

> [M.] has reported abuse from [Ms. Walston] happens a lot. [Ms. Walston] beats him and hits him with anything near her when she beats him. [Ms. Walston] will use a shoe, wood, [or] book.
>
> [M.] does not want to go back to [Ms. Walston's] house. [M.] says this has been going on since he was about 6 years old.
>
> [M.] says his sister steps in and stops his mother from hit[ting] him more. [Ms. Walston] gets angry and hits him.

2

Mr. Lindsay filed a petition on a Sunday; the District Court was closed. For that reason, a District Court Commissioner issued an interim protective order effective through April 8. 2025.

The District Court issued a temporary protective order on April 8, 2025. Upon "consideration of the petition and evidence," the District Court found that there existed reasonable grounds to believe that Ms. Walston committed physical abuse against M. when she "punched the minor child." (Capitalization omitted). As required by § 4-505 of the Family Law Article, the District Court ordered the Montgomery County Department of Health and Human Services ("the Department") to conduct an investigation and prepare a report. The April 8 protective order set a final protective order hearing for April 15, 2025, and remained in effect until that date.

Over the intervening week, the Department investigated the allegations against Ms. Walston. Because Ms. Walston had related criminal charges pending at the time, on the advice of counsel,[1] she declined to participate in the Department's investigation. Nonetheless, the Department prepared a report before the District Court's final protective order hearing on April 15, 2025.

Both parties appeared at the final protective order hearing on April 15. The District Court found by a preponderance of the evidence that Ms. Walston: (1) had placed M. "in fear of imminent serious bodily harm"; and (2) committed "[a]ssault in any degree[.]" In

---

[1] The Office of the State's Attorney for Montgomery County later nol prossed the criminal charges while the de novo appeal was pending in the circuit court.

describing the harm to M., the District Court noted a "history of physical abuse, punching, hitting [M.] with objects[,] [and] push[ing]" M. (Capitalization omitted). The terms of the April 15 protective order remained in effect for one year—through April 15, 2026.

### B. *De Novo Appeal to the Circuit Court*

Ms. Walston timely noted an appeal of the District Court's April 15 protective order on April 24, 2025. That same day, the clerk's office in the Circuit Court for Montgomery County docketed the appeal, generated a case number, and issued two notices. First, the clerk issued a notice entitled "Filing of Original Record and Appeal Received from District Court (De Novo)," advising that "th[e] appeal will be heard de novo in the circuit court pursuant to Rule 7-112 of the Maryland Rules." (Some capitalization omitted). Second, the clerk issued a "Notice of Hearing/Trial," which set a hearing on the appeal for May 7, 2025. Both notices referred to the proceedings in the District Court.

On April 30, 2025, Ms. Walston, through counsel, filed a motion to continue the May 7 hearing. She requested that the circuit court "continue" the "hearing in this matter" and acknowledged that the "matter was originally heard in" the District Court. On the same day, Ms. Walston also filed a motion to shorten the time for Mr. Lindsay to respond, which the court granted on May 1, 2025.

The circuit court held a hearing on May 7, 2025, as scheduled. The hearing sheet[2] and the written order that followed reflected that the circuit court granted Ms. Walston's motion to postpone and reset the May 7 hearing for May 19, 2025. Notably, the court's

---

[2] The record does not contain a transcript of the May 7 hearing. Mr. Lindsay supplied the court's hearing sheet from that day in an appendix to his brief.

4

hearing sheet stated: "appeal de novo final protective order hearing postponed. . . . Final protective order remains in effect [through] 04-15-2026."

During the hearing, the circuit court also issued a "final" protective order dated May 7, with terms identical in all respects to the District Court's April 15, 2025, protective order. Consistent with the court's hearing sheet notes, the court's May 7 order stated that the "protective order de novo appeal is scheduled for May 19, 2025[.]" (Capitalization omitted).

The parties appeared before the circuit court for the de novo appeal hearing on May 19, 2025. At the outset of the hearing, Ms. Walston's trial counsel noted that the case was "an appeal from a district court proceeding related to a final protective order where a protective order was granted" to Mr. Lindsay. Ms. Walston's counsel made an oral motion to continue the hearing once again because the State Attorney's office had nol prossed criminal charges that had been pending against Ms. Walston. Ms. Walston's counsel also requested that the circuit court "put an order into the case for a supplemental report[]" by the Department, given that Ms. Walston was now willing to participate in the investigation.

Over Mr. Lindsay's objection, the circuit court granted Ms. Walston's motion. Ruling from the bench, the circuit court explained that "now that those charges have been nol pross[ed], [Ms. Walston] does wish to participate in the interview, and so I will make that happen. I'm going to issue another temporary order of protection that will remain in effect until [May 28, 2025]."

The parties appeared before the circuit court for the de novo appeal hearing on May 28, 2025. Mr. Lindsay, Ms. Walston, M., and two additional witnesses testified. At the

5

conclusion of the hearing, the circuit court stated, "[a]fter weighing all the evidence and looking through my notes a few times, and listening and examining the exhibits, listening to the arguments of counsel, I think something happen[ed] that would constitute an assault in any degree, so I am going to grant the protective order." Following the hearing, the circuit court issued a final protective order dated May 28, 2025, effective through May 28, 2026. This order granted Mr. Lindsay physical custody of M. and included certain conditions absent from the District Court's April 15, 2025 protective order.

### C. Appeal to the Appellate Court of Maryland and Transfer to this Court

Ms. Walston filed a notice of appeal to the Appellate Court of Maryland on June 9, 2025. In an order dated June 17, 2025, the Appellate Court noted that the circuit court had exercised appellate jurisdiction in reviewing the decision of the District Court and ordered that the appeal be transferred to this Court. Ms. Walston filed a petition for writ of certiorari, which this Court granted. *Walston v. Lindsay*, 492 Md. 409 (2025).

Before we turn to the parties' contentions, it is instructive to set forth the legal framework that guides our analysis.

## II

### Legal Framework

#### A.

#### The Domestic Violence Statute

Maryland's domestic violence statute is codified in FL §§ 4-501–4-516. Originally enacted in 1980, the purpose of the statute "is to protect and 'aid victims of domestic abuse by providing an immediate and effective' remedy." *Coburn v. Coburn*, 342 Md. 244, 252

6

(1996) (quoting *Barbee v. Barbee*, 311 Md. 620, 623 (1988)). "The statute provides for a wide variety and scope of available remedies designed to separate the parties and avoid future abuse." *Id.* As such, "the primary goals of the statute are preventative, protective and remedial, not punitive." *Id.* In enacting the statute, the General Assembly intended to prevent future harm to the victim. *Id.*

The domestic violence statute defines "abuse," as including, among other things, "an act that causes serious bodily harm"; "an act that places a person eligible for relief in fear of imminent serious bodily harm"; and "assault in any degree[.]" FL § 4-501(b)(i)–(iii). "Person[s] eligible for relief" include current or former spouses; cohabitants; relatives by blood, marriage or adoption; and a child or stepchild of the alleged abuser who resides or resided with the alleged abuser or the person eligible for relief for at least 90 days within one year before the filing of the petition. *Id.* § 4-501(n).

The statute authorizes a person eligible for relief—the petitioner—to file a petition alleging abuse against the alleged abuser—the respondent—and request immediate and temporary relief from the violence. *Id.* § 4-504(a). A petition may be filed in either circuit court or District Court. *Id.*; CJ § 4-404 ("The District Court has concurrent jurisdiction with the circuit court over proceedings under Title 4, Subtitle 5 of the Family Law Article and has the powers of a court of equity in those proceedings."); FL § 4-501(f) (defining "court" as "the District Court or a circuit court in this State"). The domestic violence statute requires that the petition be under oath, FL § 4-504(b)(1)(i), include, among other things, information of prior or pending action between the parties in any court, provide the nature and extent of the abuse for which relief is being sought, state any previous injury

7

resulting from abuse by the respondent, and provide the whereabouts of the respondent, if known, to facilitate service. *Id.* § 4-504(b)(1)(ii).

### 1. *Types of Protective Orders*

Consistent with the purpose of protecting the victim from alleged abuse, the statute provides for different types of protective orders.

#### a. *Interim Protective Orders*

An individual may seek an "interim protective order" by filing a petition with the District Court commissioner when neither the circuit court nor the District Court is open. *Id.* § 4-504.1(a). If issued, an interim protective order provides the date, time, and location for a temporary protective order hearing, *id.* § 4-504.1(e)(1)(i), which—absent good cause for a continuance or court closure—must occur on the first or second day that a District Court judge is sitting after the issuance of the interim protective order, *id.* § 4-504.1(e)(1)(ii). A law enforcement officer is charged with serving the petition and interim protective order on the respondent. *Id.* § 4-504.1(g)(1).

Interim protective orders are brief in duration—they generally remain in effect until a temporary protective order hearing is held or the end of the second business day that the office of the Clerk of the District Court is open after the issuance of an interim protective order, whichever is earlier. *Id.* § 4-504.1(h)(1)(i)–(ii).

#### b. *Temporary Protective Order*

A court may issue a "temporary protective order" if the court finds that "reasonable grounds" exist to believe abuse has occurred. *Id.* § 4-505(a)(1). A temporary protective order must provide the date and time for a final protective order hearing. *Id.* § 4-

8

506(b)(1)(i). A law enforcement officer is charged with serving a temporary protective order, *id.* § 4-505(b)(1), except that a respondent previously served with an interim protective order shall be served in open court or by first-class mail if the respondent is not present at the temporary protective order hearing, *id.* § 4-505(b)(2).

A temporary protective order is similarly brief in duration. It may be effective for up to only seven days after service on the respondent. *Id.* § 4-505(c)(1). A temporary protective order may be extended "as needed[]" to effectuate service of the order or "for other good cause[,]" but not for longer than a period of six months. *Id.* § 4-505(c)(2). If the court is closed on the day a temporary protective order is due to expire, it remains effective until the second day on which the court is open. *Id.* § 4-505(c)(3). By that time, the court must hold a final protective order hearing. *Id.*

Where a judge "finds reasonable grounds to believe that abuse of a child . . . has occurred," the court is required to forward a copy of the petition and the temporary protective order to the local department of social services. *Id.* § 4-505(e)(1). The local department must investigate the alleged abuse and produce a report of its investigation to the court by the date of the final protective order hearing. *Id.* § 4-505(e)(2)(i)–(ii).

A respondent against whom a temporary protective order has been entered is entitled to an opportunity to be heard on whether the court should enter a final protective order— *i.e.*, a final protective order hearing. *Id.* § 4-506(a). The final protective order hearing must occur no later than seven days after service of the temporary protective order on the respondent. *Id.* § 4-506(b)(1)(ii).

#### c. *Final Protective Orders*

A court may proceed with a final protective order hearing if the respondent appears at the hearing, has been served with an interim or temporary protective order, or if the court otherwise ensures that it has personal jurisdiction over the respondent. *Id.* § 4-506(c)(1)(i). If the court finds, by a preponderance of the evidence, that the alleged abuse has occurred, it may grant a final protective order. *Id.* § 4-506(c)(1)(ii). A copy of the final protective order is to be served on the petitioner, respondent, and any other affected person eligible for relief in open court or by first class mail if the person is not present at the final protective order hearing. *Id.* § 4-506(i)(1). Subject to exceptions not relevant here,[3] all relief granted in a final protective order is effective for the term stated therein, not to exceed one year. *Id.* § 4-506(j)(1). The court may modify or rescind a protective order during the term of the order after notice is given and a hearing. *Id.* § 4-507(a)(1)(i)–(ii).

### 2. *Appeals of Protective Orders*

"If a District Court judge grants or denies eligible relief under a petition filed" under the domestic violence statute, "a respondent, any person eligible for relief, or a petitioner may appeal to the circuit court for the county where the District Court is located." *Id.* § 4-507(b)(1). The appeal "shall be heard de novo in the circuit court." *Id.* § 4-507(b)(2). Pending a de novo appeal, "the District Court judgment shall remain in effect until superseded by a judgment of the circuit court." *Id.* § 4-507(b)(3); *see also* Md. Rule 7-112(b) ("The District Court judgment shall remain in effect pending the appeal unless and

---

[3] Under certain circumstances, a court may order that relief be effective for two years, FL § 4-506(j)(2), or permanently, *id.* § 4-506(k)(1).

10

until superseded by a judgment of the circuit court[.]"). "Unless the circuit court orders otherwise, modification or enforcement of the District Court order shall be by the District Court." FL § 4-507(b)(3).

**B.**

**De Novo Appeals in the Circuit Courts**

Since the inception of the District Court in 1971, Maryland has employed a two-tiered trial court system.[4] Under this system, a party aggrieved by a judgment of the District Court may take a de novo appeal to the circuit court. *See* Md. Rule 7-102(a) (providing that "an appeal shall be tried de novo in all civil and criminal actions[,]" subject to express circumstances in which an appeal shall be on the record).

A circuit court proceeding in a de novo appeal "occupies a unique position as both an appeal and a trial." *Stone v. State*, 344 Md. 97, 105 (1996). Indeed, de novo appeals are "wholly original proceedings[]" in which a circuit court must act "as if no judgment ha[s] been entered in the lower court." *Id.* (quoting *Hardy v. State*, 279 Md. 489, 493 (1977)). The statute governing appeals from the District Court's grant or denial of a protective order is clear: an appeal to the circuit court "shall be heard de novo[.]" FL § 4-507(b)(2).

---

[4] When the General Assembly established the District Court, it provided "an absolute right to trial de novo[]" in the circuit courts. *Suter v. Stuckey*, 402 Md. 211, 234 (2007) (quoting 1970 Md. Laws, Ch. 528). In the next legislative session, the General Assembly revised its legislative grant in "an apparent compromise between an absolute right to a de novo appeal and its complete elimination[.]" *Id.* (citing 1971 Md. Laws, Ch. 423). The General Assembly chose a compromise position: allowing for enumerated instances of de novo appeals. *Id.* (citing 1971 Md. Laws, Ch. 423).

De novo appeals are governed by Maryland Rule 7-112. Under that rule, District Court judgments are to remain in effect "unless and until" superseded by a circuit court judgment. Md. Rule 7-112(b). In the event that a circuit court enters a judgment, it must send notice of the superseding judgment to the District Court, "who shall enter the notice on the docket." *Id.* 7-112(e).

## C.

### Jurisdiction in the Appellate Court of Maryland

Except as constitutionally authorized, appellate jurisdiction "is determined entirely by statute," and accordingly, "a right of appeal must be legislatively granted." *Mayor & City Council of Baltimore v. ProVen Mgmt., Inc.*, 472 Md. 642, 647 (2021) (citation modified). CJ § 12-301, which is the general statute authorizing appeals from a final circuit court judgment, provides that "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." The section goes on to specifically grant a right of appeal "from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." CJ § 12-301. CJ § 12-302(a) provides such a limitation on the broad right to appellate review set forth in CJ § 12-301. That section denies a right of appeal "from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body[,]" unless "a right to appeal is expressly granted by law[.]" *Id.* § 12-302(a). Accordingly, CJ § 12-302(a) does not permit an appeal from a final circuit court judgment

12

where that court exercised appellate jurisdiction in reviewing a decision of the District Court.

## III

## Discussion

### A.

### Parties' Contentions

Ms. Walston argues that, although she filed a de novo appeal to the circuit court from the District Court's final protective order, the circuit court functionally exercised original jurisdiction, instead of appellate jurisdiction, when it issued intervening protective orders, and therefore, she retains a right of appeal to the Appellate Court under CJ § 12-301. Ms. Walston directs us to the language in FL § 4-507(b)(3), which states that, "[i]f an appeal is filed under this subsection, the District Court judgment shall remain in effect until superseded by a judgment of the circuit court. Unless the circuit court orders otherwise, modification or enforcement of the District Court order shall be by the District Court." Ms. Walston asserts that the term "judgment" as used in FL § 4-507(b)(3) must mean "final judgment"—otherwise, she argues, the separate clause authorizing modification would be rendered superfluous. Ms. Walston asserts that, by entering intervening orders during the pendency of the de novo appeal prior to the final protective order hearing, the circuit court acted as if the matter had been "filed anew" and it was hearing the case from the outset in the exercise of original jurisdiction.

According to Ms. Walston, the court's "most un-appellate exercise of jurisdiction" was the act of contacting the Department and arranging for an investigator to interview Ms.

13

Walston. She points out that the court expressly stated that the resulting report would be used at the merits hearing. As further evidence to support her "original jurisdiction" argument, Ms. Walston notes that the circuit court's docket entries and caption referred to Mr. Lindsay as the "plaintiff" or "petitioner" and Ms. Walston as "defendant" or "respondent[,]" as if the matter had been filed anew. Ms. Walston also asserts that there was no reference in the court's record to a de novo trial.

Because the circuit court entered intervening orders, Ms. Walston asserts, it was not exercising appellate review, and therefore, CJ § 12-301 permits appellate review in the Appellate Court of the circuit court's entry of the final protective order on May 25, 2025.

For his part, Mr. Lindsay argues that the domestic violence statute is very clear that, where a party appeals a decision of the District Court granting or denying relief under a petition filed under the domestic violence statute, the circuit court is exercising appellate jurisdiction by conducting a de novo appeal.[5] Mr. Lindsay points out that the circuit court

---

[5] In addition to his substantive assertions, Mr. Lindsay advances several procedural arguments for why this Court should not consider the merits. Specifically, Mr. Lindsay argues that: (1) Ms. Walston failed to preserve the issue of the circuit court's authority to issue intervening protective orders during the pendency of her de novo appeal; (2) principles of equity should make the Court "wary" of exercising its discretion to resolve an issue where Ms. Walston's affirmative requests for continuances contributed to, if not fully caused, the circuit court to issue intervening protective orders; (3) Ms. Walston failed to include a transcript of the May 7 proceeding, which prevents a "thorough analysis of the issues in this appeal;" and (4) the case is moot given the expiration of the circuit court's intervening protective order. We will exercise our authority to consider the merits.

Although "[o]rdinarily, an appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court," we "may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense

14

has concurrent jurisdiction under the domestic violence statute to enter protective orders, and that it would be inconsistent with the purpose of the domestic violence statute to construe the statute in a manner that prevents the circuit court from issuing intervening orders during the pendency of a de novo appeal. Mr. Lindsay also asserts that the record in this case is clear that the circuit court was exercising its appellate, not original, jurisdiction, pointing to the language used in the court's notices, the court's hearing notes, and the language in the intervening protective orders. He contends that Ms. Walston misunderstands the nature of de novo appeals under Maryland case law. Mr. Lindsay

and delay of another appeal." Md. Rule 8-131(a). This case involves an important legal issue—the circuit court's authority to issue intervening orders in the context of de novo appeals involving domestic violence petitions, and whether a respondent has a further right of appellate review where the circuit court enters a final protective order after issuing intervening orders. We determine that it is desirable to address this issue to provide guidance to the courts and parties.

For the same reason, we shall exercise our discretion to address the merits of a moot case because "we are convinced that the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct." *E.g.*, *Coburn v. Coburn*, 342 Md. 244, 250 (1996). In *Coburn*, we exercised our discretion to consider a matter of statutory construction involving Maryland's domestic violence statute notwithstanding that the controversy was moot. *Id.* We noted the limited duration of protective orders, which was 200 days at that time. *Id.* We also determined that the issue involved the construction of a statute routinely applied by the courts of this State, and that our interpretation would "assist judges in determining whether victims of abuse are in need of protection." *Id.* We reach the same conclusion here. Whether a circuit court has the authority to enter intervening orders during the pendency of a de novo appeal within the context of the domestic violence statute, and whether there is a further right of review when it has done so, has significant implications. We therefore exercise our discretion to consider the issue.

Finally, we are unpersuaded by Mr. Lindsay's other reasons why we should decline our review. We determine that we are able to review this matter without the May 7 transcript, and we are not persuaded to decline review because the circuit court entered intervening orders in part because Ms. Walston requested continuances.

15

argues that because the circuit court was exercising appellate jurisdiction, the statutory scheme is clear: there is no further right of appeal under CJ § 12-302(a).

**B.**

**Standard of Review**

In this case, we must determine whether, during the pendency of a de novo appeal in which a circuit court is reviewing a District Court's final decision related to a petition filed under the domestic violence statute, the General Assembly granted the circuit court the authority to enter intervening protective orders prior to the entry of a final protective order, and, if not, whether the issuance of such interim orders transforms the nature of the proceeding from an appellate proceeding to a matter in which the circuit court is exercising original jurisdiction. We review questions of law and statutory interpretation de novo. *Wheeling v. Selene Fin. LP*, 473 Md. 356, 373 (2021).

**C.**

**Statutory Interpretation Principles**

We start our exercise of statutory interpretation with the cardinal rule—"to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute." *Wheeling*, 473 Md. at 376; *see also Lockshin v. Semsker*, 412 Md. 257, 274 (2010) ("A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny."). We begin with the text in our search for legislative intent, viewed not in isolation but "within the context of the statutory scheme to which it belongs." *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024) (quoting *Nationstar Mortg. LLC v. Kemp*,

16

476 Md. 149, 169 (2021)).  "Our review of the text is wholistic, seeking to give effect to all of what the General Assembly included and not to add anything that the General Assembly omitted."  *Id.*  "In our analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it; we avoid 'forced or subtle interpretations'; and we avoid constructions that would negate portions of the language or render them meaningless."  *Id.* (quoting *Wheeling*, 473 Md. at 377).  We presume the General Assembly "intends its enactments to operate together as a consistent and harmonious body of law," and in doing so, "we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope."  *Wheeling*, 473 Md. at 377 (quoting *Lockshin*, 412 Md. at 276).

"After exhausting the tools available for our textual analysis, viewed in context of the statutory scheme and in light of apparent legislative purpose, we determine whether the statute is ambiguous."  *Westminster Mgmt.*, 486 Md. at 645.  Ambiguity can arise in two different ways: "Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme[.]"  *Bennett v. Harford County*, 485 Md. 461, 485–86 (2023) (quoting *Comptroller v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 380 (2022)).  If neither applies, "our inquiry generally ceases at that point and we apply the statute as written."[6]  *Williams v. Morgan State Univ.*,

---

[6] Even when we determine that a statute's plain language is unambiguous, we may, at our discretion, decide to consult legislative history to confirm our interpretation of the statute's plain language. *Doe v. Cath. Relief Servs.*, 484 Md. 640, 652 (2023) (citing *Rowe v. Md. Comm'n on Civ. Rts.*, 483 Md. 329, 343 (2023)).

17

484 Md. 534, 546 (2023) (quoting *Thornton Mellon, LLC v. Adrianne Dennis Exempt Tr.*, 478 Md. 280, 313–14 (2022)).

Finally, "the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Roman Cath. Archbishop of Washington v. Doe*, 489 Md. 514, 549 (2025) (citing *Westminster Mgmt.*, 486 Md. at 646). If "one interpretation of statutory language would produce such a result," the Court "will reject that interpretation in favor of another that does not suffer the same flaw." *Id.* at 549–50.

**D.**

**The Circuit Court Has the Authority to Issue Intervening
Protective Orders During the Pendency of a De Novo Appeal**

For the following reasons, we hold that a circuit court has the authority to issue intervening protective orders during the pendency of a de novo appeal, and that, in so doing, it does not transform the nature of the proceeding into the exercise of the circuit court's original jurisdiction that would provide an additional right of appeal to the Appellate Court.

As discussed above, the purpose of the domestic violence statute "is to protect and 'aid victims of domestic abuse by providing an immediate and effective' remedy." *Coburn*, 342 Md. at 252 (quoting *Barbee*, 311 Md. at 623). The statute "provides for a variety and scope of available remedies designed to separate the parties and avoid future abuse." *Id*. As such, "the primary goals of the statute are preventative, protective, and remedial, not punitive." *Id.* The General Assembly intended to prevent future harm to the victim. *Id.* Under the comprehensive statutory scheme, both the District Court and the circuit courts have jurisdiction to consider petitions for relief. CJ § 4-404; FL § 4-501(f).

18

Where a petition is filed in the District Court, if a District Court judge grants or denies relief under a petition filed under the domestic violence statute, a petitioner, respondent, or person eligible for relief has the right to appeal to the circuit court for the county where the District Court is located. FL § 4-507(b)(1). And the statute expressly states that the appeal "shall be heard de novo in the circuit court." *Id.* § 4-507(b)(2). FL § 4-507(b)(3) states:

> If an appeal is filed under this subsection, the District Court judgment shall remain in effect until superseded by a judgment of the circuit court. Unless the circuit court orders otherwise, modification or enforcement of the District Court order shall be by the District Court.

Ms. Walston argues that under the plain language of the statute, the District Court's judgment may only be superseded by a "final" judgment of the circuit court. We disagree with her interpretation for the following reasons. First, under the plain and unambiguous language of the provisions related to de novo appeals, the circuit court has the authority to enter orders. *See id.* § 4-507(b)(3) ("*Unless the circuit court orders otherwise*, modification or enforcement of the District Court Order shall be by the District Court." (emphasis added)). A circuit court has concurrent jurisdiction under the domestic violence statute to enter orders providing for relief. CJ § 4-404; FL § 4-501(f). There is no language in the statute that limits the types of orders that the circuit court may enter during the pendency of a de novo appeal. Nor is there any language in the statute indicating the General Assembly intended that a circuit court's entry of intervening orders during the pendency of a de novo appeal would transform the nature of the proceeding from a circuit court's exercise of its appellate jurisdiction into the exercise of original jurisdiction.

19

Ms. Walston's interpretation is also inconsistent with the statute's purpose. Under Ms. Walston's interpretation, the District Court's judgment remains in place during the pendency of the appeal, and the circuit court may only modify the District Court's judgment by the entry of a final judgment, *i.e.*, a "final protective order." In this case, the appeal was taken from the *entry* of a final protective order. However, a petitioner or any person eligible for relief would have the right to appeal a final judgment entered in the District Court that *denied* a protective order. *See* FL § 4-507(b)(1) (stating that "[i]f a District Court judge grants *or denies relief* under a petition filed under this subtitle, a respondent, any person eligible for relief, or a petitioner may appeal to the circuit court for the county where the District Court is located[]" (emphasis added)). In Ms. Walston's view, a circuit court that is exercising de novo appellate review would be powerless to enter an intervening protective order granting relief to a victim of abuse, or person eligible for relief, during the pendency of the appeal. Such an interpretation would be inconsistent with the statute's purpose of providing an immediate and effective remedy. As we have recognized, the domestic violence statute is a remedial statute designed to protect victims of domestic violence. *See Suter v. Stuckey*, 402 Md. 211, 231 (2007) ("We have examined the broader context of § 4-507 and found the Domestic Violence Protective Act to be a remedial statute designed to protect victims of domestic violence." (citing *Triggs v. State*, 382 Md. 27, 45 (2004))); *Katsenelenbogen v. Katsenelenbogen*, 365 Md. 122, 133–34 (2001); *Coburn*, 342 Md. at 252; *Barbee*, 311 Md. at 623. It would be illogical and inconsistent with the statute's broad remedial purpose to interpret the domestic violence

20

statute to prevent a circuit court from entering intervening orders to protect a victim during the pendency of a de novo appeal until the entry of a final protective order.

We further observe that a circuit court's issuance of intervening protective orders is consistent with the nature of a de novo appeal under Maryland's two-tiered system. A circuit court proceeding in a de novo appeal "occupies a unique position as *both* an appeal and a trial." *Stone,* 344 Md. at 105 (emphasis added). De novo appeals are treated "as 'wholly original proceedings, that is, as if no judgment had been entered in the lower court.'" *Id.* (quoting *Hardy*, 279 Md. at 493). Rather than reviewing a District Court's judgment based upon the record before that court, the circuit court conducts the proceedings anew. In the context of a de novo appeal to the circuit court of a District Court judge's decision related to a protective order, the circuit court can—and should—treat the proceeding as if it were "wholly original." Interpreting the plain language of FL § 4-507(b) as giving the circuit court the authority to issue orders—*i.e.*, providing that, "*[u]nless the circuit court orders otherwise*, modification or enforcement of the District Court order shall be by the District Court[]*"—is consistent with both the purpose of the domestic violence statute, as well as the nature of a de novo proceeding under our system, in which de novo appeals are treated as wholly original proceedings. (Emphasis added). There is absolutely no indication that, by a circuit court entering intervening orders during the pendency of an appeal, the General Assembly intended to transform a de novo appeal into an original circuit court proceeding for which there is an additional statutory right to appeal.

Indeed, this case highlights why it may be appropriate for the circuit court to "modif[y]" an order previously entered by a District Court prior to the entry of a final

21

protective order. We explain. During the District Court proceeding, after the District Court ordered a Department investigation as part of its temporary protective order, Ms. Walston declined to be interviewed because of pending criminal charges.

When the parties appeared in the circuit court on May 19, 2025, during the pendency of the de novo appeal, Ms. Walston asked for two things: (1) a continuance; and (2) that she be permitted to participate in the Department's investigation now that the criminal charges had been nol prossed. Her counsel specifically requested that the court "*put an order* into the case for a supplemental report by the Department," given Ms. Walston's willingness to participate in the investigation. (Emphasis added).

In considering Ms. Walston's request, the court entered a temporary protective order after stating that it had "read the whole file" and determined that there existed reasonable grounds to continue "all of the terms and conditions of the protection that" had been granted by the District Court to Mr. Lindsay. The circuit court considered not only the requirements for the issuance of a temporary protective order under FL § 4-505(a)(10), but it also *modified* the terms and conditions that had been put into place in the District Court's order by "including one additional piece"—which was to require that the Department's investigator "arrange for and interview" Ms. Walston. The temporary protective order entered by the circuit court with Ms. Walston's modified condition allowed Ms. Walston to participate in the Department investigation to enable the circuit court to have a full picture at the final protective order proceeding, which is consistent with the nature of a de novo appeal—a wholly original proceeding.

Nor are we persuaded by Ms. Walston's argument that the court's description of Mr. Lindsay as "petitioner" and Ms. Walston as "respondent" is an indication that the court was exercising original jurisdiction. The domestic violence statute defines "petitioner" as the individual who files a petition under the statute, and "respondent" as the person alleged in the petition to have committed the abuse. FL § 4-501(o), (p). It makes complete sense that these statutory definitions would apply in a de novo proceeding in which the allegations are considered anew. We further observe that the circuit court's hearing sheet and notes reflect that it considered the case as a de novo appeal. Regardless, the court's docket sheet or notes would not affect our legal determination of the nature of the proceeding under the statute.[7]

Finally, Ms. Walston makes a policy argument that "[p]etitioners sometimes lose in the District Court and again in the circuit court. When that occurs, appellate review may be the only mechanism available to correct legal error and ensure that victims receive the protection the law provides." However, the right to appeal under these circumstances is set by statute. The General Assembly has made a policy determination that there is no third

---

[7] We note one procedural irregularity in this case, which has no bearing on the outcome. When the parties were present before the circuit court on May 7, after Ms. Walston requested her first continuance, the circuit court stated that the "[f]inal protective order remains in effect [through] 4-15-26." Despite the court's statement that the final protective order would remain in effect, the court then issued its *own* "final" protective order dated May 7 with terms identical in all respects to the District Court's April 15, 2025 protective order. In addition to the fact that the order was mislabeled as a "final" protective order—when it clearly was not—given that no terms changed, the better practice would have been to leave the District Court's final protective order in place. We can imagine how confusion could arise when there were two orders in effect—the District Court's final protective order and a circuit court's intervening order with identical terms.

23

bite at the apple. Such a result is not unique to the entry of a circuit court's final protective order at the conclusion of a de novo appeal—indeed, generally, there is no statutory right to appeal to the Appellate Court for any civil case in which the circuit court is exercising appellate jurisdiction. *See* CJ § 13-302(a).

## IV

## Conclusion

For the foregoing reasons, we hold that, when undertaking a de novo appeal under FL § 4-507(b) from a District Court judge's final decision related to a petition filed under the domestic violence statute, a circuit court has the authority to enter intervening protective orders during the pendency of the appeal. The entry of such orders by the circuit court does not transform the circuit court's appellate jurisdiction into an exercise of original jurisdiction thereby giving the parties a further right of appeal pursuant to CJ § 12-302(a). We affirm the judgment of the Circuit Court for Montgomery County.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.**